## NYHUIS, Estate of, In Re: NYHUIS, Admr., Plaintiff-Appellant, v. BURCH, Jr., Gdn. et., Defendant-Appellee.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22375.   Decided April 21, 1952.

W. K. Gardner, H. O. Ziegler, Cleveland, for plaintiff-appellant.

E. L. Goette, for defendant-appellee.

## OPINION

By SKEEL, PJ.

This appeal comes to this Court on questions of law from an order of the Probate Court of Cuyahoga County vacating and setting aside a former order of such Court dated July 11, 1950, settling the final account of Christian O. Nyhuis, as administrator of the estate of Estelle Nyhuis, a. k. a. Estelle Chavis, deceased.

Christian O. Nyhuis, claiming to be the surviving spouse of the deceased Estelle Nyhuis, a. k. a. Estelle Chavis, filed application for letters of administration of the estate of Estelle Nyhuis, a. k. a. Estelle Chavis, deceased, which application was granted and appointment made by the Probate Court of Cuyahoga County on January 24, 1948.

The face of the record shows Christian O. Nyhuis as husband and Beatrice Fernandez, daughter, to be the heirs at law of the deceased. The inventory and appraisal show the following assets subject to administration:

| | |
|---|---:|
| Bank Accounts | 8132.05 |
| Real estate | 3100.00 |
| | 11,232.05 |
| Property exempt from adminis. | 2,246.40 |
| Net estate | 8,985.65 |

Beatrice Fernandez, the record shows, was a daughter of the deceased, born prior to her alleged marriage to Christian O. Nyhuis on April 3, 1926. Beatrice Fernandez, now living in Pontiac, Michigan, is married and has been adjudged incompetent and at the time this proceeding was commenced L. C. Burch, Jr., was appointed and qualified as guardian of her estate.

On May 28, 1949, application for transfer of real property was filed and granted, whereby the real estate was transferred to said Christian O. Nyhuis and Beatrice Fernandez, one-half interest to each. On Nov. 30, 1949, the administrator filed his final account which in part set forth the following:

| | |
|---|---:|
| "Property received by Nyhuis exempt from administration | 2246.40 |
| Administrator's fee | 287.88 |
| Distributive share received by Nyhuis | 2142.22 |
| Distributive share received by daughter | 2142.22 |
| Admr. attorney fees | 575.00 |

After the account was filed, Beatrice Fernandez on Dec. 30, 1949, filed an application to pass the approval of such account because she desired to file a petition to determine heirs.

Prior to that time, that is on Jan. 12, 1949, the then guardian of Beatrice Fernandez, incompetent, George A. Sutton of Pontiac Michigan, had forwarded to the probate court a petition to determine heirs, which was not filed because it was not presented as an adversary action. Before the attempt to file such petition, the husband of Beatrice Fernandez wrote to the Probate Court claiming that Christian O. Nyhuis had not been legally married to the deceased because of a previous marriage. The record further discloses that no steps were taken to challenge the account, and on July 11, 1950 the same was approved and journalized by the court. The account, as approved on its face, contains the following statement:

"The undersigned hereby acknowledges receipt of a copy of the foregoing administrator's account and report of distribution and hereby evidences their approval thereof.

(Signed) Christian Otto Nyhuis

George A. Sutton,

Guardian of Beatrice Fernandez, incompetent."

On March 20th, 1951, the proceeding here being considered, was commenced by filing a motion to vacate the settlement of the administrator's account approved July 11, 1950, upon the ground of fraud. The motion is supported by affidavit alleging that the fraud consisted of the distribution of assets to Christian O. Nyhuis as surviving spouse, when in fact he was not the surviving spouse or an heir at law of the deceased for the reason he was married to one Willda R. Sampsell on the 8th day of May, 1919, and that such marriage has continued until the date of this motion.

On May 23, 1951, three pleadings were filed, one seeking to remove Christian O. Nyhuis as administrator, one excepting to the final account because of the alleged wrongful distribution as set forth in the motion and affidavit to vacate the settlement of account, and the other to determine liability for loss caused by personal use of trust property by fiduciary in which petition the bonding company was made a party. These matters are still pending.

At the hearing of the motion to vacate, the evidence was directed to the one question as to whether Christian O. Nyhuis was legally married to the deceased during her lifetime. In support of the motion, counsel for the guardian of Beatrice Fernandez, produced the records of Probate Court of Cuyahoga County showing a marriage license issued to Christian O. Nyhuis and Willda R. Sampsell on May 8, 1919, which license discloses that the marriage was solemnized by M. J. Penty, Justice of the Peace, on the date the license was issued and returned to Probate Court as provided by law.

It is the contention of the administrator that his alleged

marriage with Willda R. Sampsell was of no legal effect because at the time it was solemnized Willda R. Sampsell was in law and fact the common law wife of Harry A. Kohler and therefore his marriage with the deceased at Erie, Pa., on April 3, 1926, constituted a valid marriage.

In support of this contention, considerable evidence was introduced with regard to the relation of Willda R. Sampsell and Harry A. Kohler, beginning in June or July, 1918. There is no conflict in the evidence with regard to the following facts testified to by Willda R. Sampsell, now known as Willda E. Pierce.

That Willda R. Sampsell and Harry A. Kohler met in the early summer of 1918 as employees of "Luna Park;" that after living together for about ten days, Willda said to Harry A. Kohler: "What do you say we get married? I don't like this;" that shortly thereafter they went to Probate Court and got a marriage license (Mover's exhibit 4 and 5) dated Aug. 2, 1918; that they went directly to Luna Park from the court house, where Harry A. Kohler with Willda announced to the other employees: "We just got married this morning and I want you to meet my wife." There was a wedding supper and they then cohabited as man and wife.

In explanation of what subsequently took place, and also the grounds upon which the mover contends the foregoing conduct does not support the administrator's claim that a common law marriage was established, the witness after giving the foregoing evidence, testified:

"Then we lived together for several months and I finally discovered through other people that you had to go through a ceremony by a minister to make it a marriage, so I kept begging the man to go through a legal ceremony."

After August 2, 1918, evidence was introduced both by Willda R. Pierce (Sampsell) and others that they lived together as man and wife and that they were known in the neighborhood where they lived, as man and wife.

It was after a doubt as to the legality of her relations with Harry A. Kohler and his continued refusal to go through a marriage ceremony after they had lived together for some time as man and wife that Willda R. Pierce (Sampsell) who met Christian O. Nyhuis through Harry A. Kohler, went through the marriage ceremony with Nyhuis. She testified that after the ceremony she remained in his house only three days; that they did not cohabit as man and wife during that time, and after being told that all he wanted was a "housekeeper" she left and in a few days returned to live with Harry R. Kohler. A child was born to the Kohlers on April 12, 1920 and is recorded in the records of vital statistics of the City

of Cleveland (Register No. 5743) as "legitimate." Harry A. Kohler abandoned Willda in 1922 and she thereafter married Frank P. Pierce on Dec. 23, 1925, with whom she is now living and has, since the date of their ceremonial marriage. The record shows that Kohler is dead, the date of his death being in doubt, probably some time before 1932.

The mover, upon trial of the motion, bottomed his request to vacate the approval under the provisions of §10506-40(a) GC which provides:

"Such order may be vacated for fraud, upon motions of any person affected thereby, or upon order of the court at its own instance, if such motion is filed or order is made within one year after discovery of the existence of the fraud. Any person who is subject to any legal disability may file such motion at any time within one year after the removal of such disability or within one year after he discovers the existence of the fraud, whichever is later, or his guardian or a successor guardian may do so during the period of such disability. If the death of any person occurs during the period within which he could have filed such motion, his administrator or executor may file such motion within one year after death."

Fraud is the basis of the motion and the fraud relied on is that Christian O. Nyhuis was in law and fact not the survivor spouse of the deceased. From the record there is considerable doubt on what basis the court ordered the approval and settlement of the administrator's account vacated by its order of May 18, 1951. The court said at the conclusion of the evidence:

"We have taken considerable evidence here, gone into the merits of the case almost, on the hearing of this motion to vacate. There is a controversy here and it cannot be heard except upon exceptions filed to the account. If the order approving the account is vacated, then you will proceed and we will hear it on its merits. All I have here now is a question of whether the Court should, under the circumstances, and from the facts as presented here a few days ago, vacate and set aside this record. I will hear from you on that."

And again the court said:

"We have enough evidence to raise a doubt, a question in the mind of the court, and I think there is good cause for vacating the approval of the account. That is discretionary. If the court determines that there is good cause for so doing, he may vacate it. I think under the facts and circumstances brought out in this hearing on this motion, it is the plain duty of the court to afford them an opportunity to raise the question, but I don't determine the issues right now."

The record further discloses:

"The Court: I don't have to find that these people were married.

"Mr. Gardner: Will the entry show that the court does not decide that question but vacates it on its discretion?

"The Court: I am just determining that there is good cause for vacating and setting aside the approval of the account, that's all.

"Mr. Gardner: I am just afraid of the legal effect that by granting their motion they will argue that there was fraud.

"The Court: I can't help what they will argue, but the court is making no other finding other than the granting of the motion to vacate and set aside the approval of the account.

"Mr. Gardner: On the ground that there is good cause shown without making any finding of fraud?

"The Court: That's right."

The journal entry however provides:

"The court being fully advised in the premises finds from the exhibits and testimony that said motion is well taken, and that the statements and allegations therein contained as well as the statements and allegations contained in the verification of said motion, are well taken and that the facts therein set forth constitute fraud and that therefore said motion should be granted."

This journal entry is susceptible of two interpretations. One that sufficient evidence is established to show that the claims of the mover are "well taken" and for that reason, without finding "fraud" to have been actually established, approval of the account is set aside so that the question of fraud may be set up in filing exceptions to the account. If this be the holding of the court, then the order must be reversed because the court is without power to vacate the approval of the account under the circumstances of this case except fraud be established to the satisfaction of the court by clear and convincing proof.

The statute (§10506-40 GC, supra) provides that an order of the court upon the settlement of an account shall have the force and effect of a judgment. The only power of the court to vacate the judgment is provided in paragraphs (a), (b), (c) and (d) of the statute. The provisions of paragraph (b) can have no application here, as is true of (c) and (d). The mover was a party, was represented by a guardian, had full knowledge that the account had been filed for settlement and approval of the court, and consented to its approval as is shown on the face of the account in the settlement proceedings. We must therefore confine our consideration to the power conferred on the court by paragraph (a). This paragraph provides in part:

"Such order may be vacated for fraud upon motion of the person affected thereby * * *."

This is the ground set forth in the motion. No other provisions of the statute are relied upon or could be. A holding therefore that for "good cause" or "suspicion of fraud" the settlement entry of judgment is vacated, does not comply with the requirements of the statute and a vacation of the settlement of the account of the administrator of an estate for such reasons, without a finding by clear and convincing evidence that fraud, as claimed in the motion, has been established, must be reversed as contrary to law.

If the interpretation to be put upon the journal entry as above quoted is that the court found fraud to have been established, and that an order vacating the judgment settling the account of Christian O. Nyhuis as administrator of the estate of Estelle Nyhuis, a. k. a. Estelle Chavis, was entered for that reason then it is the judgment of this court that such finding is against the manifest weight of the evidence.

The fraud claimed is that Christian O. Nyhuis was not the surviving spouse of the deceased and had no legal right to participate in the proceeds of the estate. As set forth above, whether he became the lawful husband of the deceased by the ceremonial marriage performed in Erie, Pa. April 3, 1926, depends upon whether or not Willda R. Sampsell, prior to her ceremonial marriage to Christian O. Nyhuis on May 8, 1919, was in fact the common law wife of Harry A. Koehler. There is no contradiction in the evidence as to the relationship of Willda R. Sampsell (now known as Willda R. Pierce) and Harry A. Koehler. If what they did and intended to do on Aug. 2, 1918, constituted under the law of this state a common law marriage, then the question here presented must be resolved in favor of the administrator. Whether we agree that such relationships should be given legal sanction as is now the common law of this state, is for the legislature, not the courts, to decide. There are many cases where it would work a grave injustice to innocent persons not to hold persons who have assumed marital relations to the legal obligations that would have been imposed by a ceremonial marriage. In this case the failure to recognize the marital status of Willda R. Sampsell and Harry A. Kohler when established by sufficient proof, as legal at common law will put the stamp of illegitimacy on a young man and affect adversely the present marital status of his mother and stepfather, which for many years has been accepted and respected in the community, as well as branding the deceased and mother of the mover as living out the last twenty years of her life in an unlawful relationship. An

attempt recently made to outlaw common law marriages by legislation failed, and so we must assume that it is the public policy of this state to give legal effect to such relationships when properly established.

The courts of Ohio have clearly defined the elements that constitute such a relationship. They are:

1. An agreement in praesenti to become husband and wife.

2. Followed immediately by cohabitation as man and wife, and

3. Holding themselves out publicly as husband and wife, and are so regarded in the community.

**Umbenhower v. Labus, 85 Oh St 238; Markley v. Hudson, 143 Oh St 163, 54 N. E. (2d) 304; Gotterdam v. Gotterdam, 86 Oh Ap 29; Monroe v. Middle Atl. Trans. Co., 86 Oh Ap 277; Dibble v. Dibble Admr., 88 Oh Ap 490.**

Paragraphs 3 and 4 of the syllabus of the last cited case provides:

"3. To prove the existence of a common law marriage, the agreement to marry in praesenti must be shown by clear and convincing evidence; however, this element may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the communities in which they have resided.

"4. Where a valid common-law marriage is established, such status continues until legally dissolved by death or divorce."

If the evidence clearly establishes a common law marriage, the fact that one of the parties subsequently expresses doubt as to the legality of the union, and the other refuses to have a ceremonial marriage, does not affect their marital status. Nor does the return of the unused license affect such relationship when once established. Here the only evidence before the court was to the effect that the parties agreed to marry; that they went to the probate court and got a license which is in evidence and shows the signatures of both parties. This is almost irrefutable evidence of their agreement to become husband and wife. On the same day both made public announcement that they had just been married and that they cohabited as husband and wife and were so known by their friends and people who lived about them.

Without any contradiction, except as might be created because of admitted subsequent conduct, to hold that the marital relationship between Willda R. Sampsell and Frank A. Kohler was not established by clear and convincing evidence is manifestly against the weight of the evidence.

For the foregoing reasons the judgment of the Probate Court vacating the settlement of the final account and distri-

bution of assets is reversed and the cause is remanded for further proceedings according to law. Exceptions noted. Order see journal.

HURD, J, THOMPSON, J, concur.