**CLARK, Estate of, In re: CLARK, Plaintiff, v. CLARK et, Defendants.**

Probate Court, Ross County.

December 29, 1955.

John Scott Phillips, Chillicothe, for Pauline D. Clark, plaintiff.
Thomas Boulger, Chillicothe, for defendants, Ralph Clark and Margaret Simmons.

## OPINION

By STEVENS, J.

This matter is before the Court upon the petition of Pauline D. Clark, surviving spouse of Roy B. Clark, deceased, to purchase certain real estate left by decedent and not specifically devised or bequeathed; the separate answers of Ralph Clark and Margaret Simmons, the children of decedent, and the reply of Pauline D. Clark thereto; the testimony of witnesses; the exhibits; and the arguments and briefs of counsel.

The pertinent facts as disclosed by the evidence are that the decedent and plaintiff were married in 1920 and had lived continuously on the farm, which decedent had inherited, since 1924. The farm consisted of three tracts of 7.25, 28.29 and 65.75 acres. The first and second tracts referred to above are separated by the Westfall road. The second and third tracts are separated by the Ragged Ridge road. The seven room frame residence, milk house, smoke house, brooder house, wash house as well as the garden are situated on the first named tract. The fences, described as "such as they are" apparently are in poor condition. There is an old three room house and two old barns on the second tract used for a "catch-all." There are no buildings on the third tract.

The farm has been operated as a single unit for almost fifty years (since 1906). The fields are rotated in corn, wheat, oats, clover and pasture. Wheat, straw and clover seed was sold while most of the corn raised on the farm was fed to hogs.

The question for determination is does plaintiff have the right to purchase the three tracts constituting the farm described above or is she limited to all or part of the first named tract of 7.25 acres upon which is located the dwelling, garden and other outbuildings.

The three tracts were appraised as a whole for $12,500.00 and no exceptions made to the Inventory and Appraisement. Plaintiff's right to purchase is founded on sub-section "(A)" of §2113.38 R. C., since the gross appraised value of the estate prevents her from purchasing under sub-section "(C)" of this statute.

As opposed to plaintiff's contention that a liberal and literal construction of the statute entitles plaintiff to purchase the farm as a whole, defendants contend that the statute merely embraces the common-law doctrine of "curtilege" and therefore must limit the plaintiff's right to purchase to the mansion house, the yard, garden and ground upon which the residence and outbuildings are situated.

The statute governing in this case reads as follows:

"Sec. 2113.38 R. C. SURVIVING SPOUSE MAY PURCHASE PROPERTY. (Sec. 10509-89 GC). A surviving spouse even though acting as executor or administrator, may purchase the following property, if left by the decedent and if not specifically devised or bequeathed:

"(A) The mansion house, including the parcel of land on which such house is situated and lots or farm land adjacent thereto and used in conjunction therewith as the home of the decedent, and the household goods contained therein, at the appraised value as fixed by the appraisers;—"

"—(C) Any other real or personal property of the decedent not

exceeding, with the mansion house and land used in conjunction therewith and such household goods as the spouse elects to purchase, one third of the gross appraised value of the estate, at the appraised value as fixed by the appraisers.—"

(125 v. S. 361. Effective 10-1-1953.)

"On the hearing of the application or petition, the finding of the Court shall be in favor of such surviving spouse unless it appears that the appraisement was made as a result of collusion or fraud or that it is so manifestly inadequate that a sale at such price would unconscionably prejudice the rights of the parties in interest or creditors.—"

No claim of collusion or fraud or inadequacy of appraisement has been made or appears from the evidence. ,

At the outset we do not feel called upon to elaborate upon common-law "curtilege" for the reason that our legislature has gone beyond this term. The Ohio statute covers not only the curtilege, namely: the mansion house, garden and buildings appurtenant to the residence, but lots and farm land adjacent thereto and used in connection therewith as the home of decedent. What may be termed the "right of curtilege" had already been given to the surviving spouse prior to the amendment of the statute to cover "lots or farm land" adjacent thereto.

An examination of the history of statutory provisions analogous to our present law dealing with the rights of a surviving spouse to property of the deceased consort reveals that the subject has been before our legislature a number of times starting with §6074 R. S. and running through S & C 578; S & C 614; 38 v. 146; 45 v. 25; 87 v. 298; 88 v. 348; 103 v. 464; 108 v. Pt. I, 703; 110 v. 57; 114 v. 320 (420); 116 v. 385 (396); 119 v. 394 (406); 123 v. 460 (461), and 125 v. S. 361.

As we examine each enactment or amendment we discover a definite pattern which consistently seeks to liberalize and increase the rights of the surviving spouse. Commencing with the limited right to personal property the legislature has gradually expanded the rights of the spouse both in amount and kind.

At the risk of digression but so that no confusion may arise from the use of the phrase "—and lots of farm land—" in some of the cases, attention is called to the fact that this phrase was used in 119 v. 394 (406) in 1941. However both before 114 v. 320 (420) in 1931 and 116 v. 385 (396) in 1935, and thereafter 123 v. 460 (461) in 1949-50, the phrase "—and lots or farm land—" is employed.

Coming now to examine §2113.38 R. C. (§10509-89 GC), whether under the guise of construction, interpretation or definition, we find the first phrase demanding attention is "—and lots or farm land adjacent thereto—."

"In general 'farm' means any tract of land used for raising crops or rearing animals."

"A farm is a tract devoted to cultivation under a single control, whether it be large or small, isolated or made up of many parcels."

Words and Phrases, Vol. 16, page 248; Bouvier's Law Dictionary; Webster's Dictionary.

"The phrase 'parcel of land' as used in this section means a con-

tinuous tract or plot of land in one possession, no part of which is separated from the rest by intervening land in another possession."

Words and Phrases, Vol. 2, page 61.

"A 'parcel of land' or 'parcel of real property' means a contiguous quantity of land in possession of, or owned by, or recorded as the property of, the same claimant, person or company."

Words and Phrases, Vol. 2, page 56.

A farm has been defined as:

"—A considerable tract of land, cultivated or used in some one of the usually recognized ways of farming; an indefinite quantity of land, some of which is cultivated; whether it is large or small, isolated or made up of many parcels, for a farm may be of any size, of any shape, of any boundaries, and may include less than one lot or comprise several lots or parts of lots;—"

35 Corpus Juris Secundum, page 746.

We come now to the word "adjacent" as employed in the phrase "—and lots or farm land adjacent thereto—."

"The word 'adjacent' is defined by Webster and other lexicographers to mean 'to lie near,' 'close,' or 'contiguous.'

"In some decisions courts have held it to mean 'in the neighborhood or vicinity of'; in others 'adjoining or contiguous to—.'

" 'Adjacent' does not at all times mean 'adjoining' or 'abutting,' but it is many times so used, and the purposes of its use are to be known from the context."

Words and Phrases, Vol. 2, page 607.

The word adjacent has also been held to mean lying near to or by; close to or by; neighboring or in the vicinity of, yet such words have no arbitrary meaning or definition but their meaning must be determined by the object sought to be accomplished by the provision in which they are used.

Adjacent, it is said, conveys the idea merely of nearness, and not of immediate proximity. Its meaning is not restricted to the more confining words adjoining, contiguous to, contacting, touching, abutting, along, fronting, next to, attached, beside or bordering. Even the last above words do not necessarily imply that the things spoken of are in contact.

We come next to the phrase "—and used in conjunction therewith as the home of the decedent,—"

"Conjuncta in the civil law means things joined together or united, as distinguished from disjuncta, things disjoined or separated."

"The primary definition of the word 'conjunction' is a joining or meeting of individuals or of distinct things; union; connection; combination; association."

Words and Phrases, Vol. 2, pages 155, 156.

Since "conjunction" is defined by Webster as meaning a combination, connection or association, the phrase "—and used in conjunction therewith as the home of the decedent,—" can logically be held to mean lots or farm land used or operated by the decedent in combination, connection or association with the mansion house, including the parcel of land on which such house is situated, as the home of the decedent.

To overemphasize any one word or phrase of the statute at the expense of the others would be to give the statute a stinted meaning. We must remember that the legislature is permitting the spouse to elect to purchase not only the home but lots and farm land. A mansion house, alone, without the farm land used by the decedent would hardly constitute a farm. The old expression so often heard "home farm" connotes both a place to live and a place to work.

Attention must be called to the fact that the statute extends the right to purchase to all surviving spouses,—the wife as well as the husband. We believe that it would be consonant with the language of the statute and conducive to its intent and the purpose to be accomplished to infer that on the passing of the husband or wife the other should be permitted, by making adequate compensation for the other parties in interest and creditors therefor as the law provides, to continue to occupy the home and operate the farm as their own. Equal rights have definitely been given to husband and wife.

Some emphasis has been placed upon the fact that the three tracts used and farmed by decedent as his home are traversed by public roads, and are therefore separated to the extent that they are not adjacent to each other. Roads and highways are to farms assets or liabilities depending upon a great many circumstances and conditions. They may be constructed by the owners of the farm, relocated or abandoned. They may be on the farm when it is acquired or forced upon the owner by condemnation proceedings. The generally accepted principle that the owner of real estate in the country owns to the center of the road, except for highway purposes, prevails. Therefore, we do not feel that any general principles can be drawn from the fact that this farmland is intersected by roads which would prove of any material benefit in this type of case.

Coming to the case law, the State of Ohio appears to be unique in its liberality to a surviving spouse and therefore there is little or no case law to be found in other jurisdictions. Considerable hope was raised when we found that annotations under §2113.38 R. C. indicated comparative legislation in the states of Indiana, Kentucky, Pennsylvania and Tennessee. However a search of these statutes only indicated rights of the widow and minor children to the use of certain property, years support or exemptions, all of which are inapplicable to the present question of the right to buy realty at the appraised value. The only significant value to be gained from the cases in other jurisdictions is the fact that the courts were universally liberal in construing such remedial statutes.

In Ohio the case nearest in point is that of **In Re Burgoon, 80 Oh Ap 465, 36 O. O. 200, 76 N. E. (2d) 310**, wherein the Court of Appeals of Henry County on 1-18-1946 held that §10509-89 GC did not entitle a surviving spouse to purchase at the appraised value, the entire lot on which the mansion house was situated, where there were located on the same lot two other buildings, a pool room and restaurant, which were rented and used for business purposes, not in connection with the mansion house, but limited such spouse to the purchase, at the appraised

value, of only that portion of the lot which was not occupied by such other two buildings.

We are in entire accord with the opinion in this case.

In the case of **Dorfmeier v. Dorfmeier, 69 Abs 15, 123 N. E. (2d) 681,** decided 6-19-1954 by Hon. Rodney M. Love of the Probate Court of Montgomery County, Ohio, it was held in Syllabus 4:

"Where a husband and wife occupy a non-divisible urban house as a home, the mansion house character of the premises attaches and is not destroyed either in whole or part by the fact that the husband and wife use part of the house for rental or other commercial purposes unless the commercial use becomes so pretentious that the occupancy as a home is merely incidental to the commercial use of the premises."

The judge in this case emphasized the fact that §2113.38 R. C. gave to a surviving spouse a valuable property right and further pointed out that:

"In determining legislative intent it is necessary to ascertain the defect in the preexisting law, the remedies provided by the statute under construction, and the reason for the remedies."

Other Ohio cases illustrative of the fact that such remedial statutes should be liberally construed so as to furnish all of the remedy and accomplish all of the purposes intended by the statute are:

**State, ex rel. Maher v. Baker, 88 Oh St 165; Scobey et al. v. Fair, Adm'r., 70 Oh Ap 51, 24 O. O. 371; Passoni v. Breehl, 14 O. Supp. 100, 29 O. O. 220, 41 Abs 315; Strawser v. Stanton, 66 Abs 121, 47 O. O. 255, 103 N. E. 2d 797; In re Reed, 65 Abs 129, 113 N. E. 2d 700; In re Melott's Estate, 162 Oh St 113, 54 O. O. 53, 121 N. E. 2d 7.**

In contemplating legislative intent, defects and remedies we must recall that preexisting statutes provided only personal property for the surviving spouse. The Ohio legislature has consistently enhanced the rights and benefits of such spouse. For this reason and to remedy the former limited provisions, rights to purchase other personal property as well as the mansion house and finally lots or farm land adjacent thereto and used in conjunction therewith as the home of the decedent regardless of its value, and likewise any other real or personal property, not exceeding with the above mentioned, one third of the gross appraised value.

As the statute is now worded we would be wholly unauthorized in limiting or enlarging the amount of farm land the surviving spouse may purchase. The statute fixes it as lots or farm land adjacent to the mansion house and used in conjunction therewith as the home of decedent. Courts should assiduously avoid exercising the legislative power of amendment under the guise of statutory interpretation.

In trying to reach a sensible construction of §2113.38 R. C. as applied to the facts in this case we have kept in mind the rights of all parties in interest, heirs, creditors as well as those of the surviving spouse.

The Court accordingly finds that the mansion house including the parcel of land on which such house is situated, together with the other real estate described in plaintiff's petition, is farm land adjacent thereto and was used in conjunction therewith as the home of the decedent, Roy B. Clark, and therefore concludes that the plaintiff, Pauline D. Clark, as

surviving spouse of said decedent, is entitled to purchase all of such property described in her petition at the appraised value as fixed by the appraisers.

An appropriate entry may be drawn.