RUMFORD & MEXICO BRIDGE DISTRICT *vs.* MEXICO BRIDGE COMPANY.

Oxford.    Opinion August 10, 1916.

*Constitutionality of bridge acts and water districts.    County clerk and clerk of Supreme Judicial Court.    Notices for special meetings.    Right of appeal.    Taking property by eminent domain.*

The act of incorporation of the plaintiff district provided that it should take effect when approved by a majority vote of the legal voters of the two sections of the district, voting separately at special meetings, to be called, warned, and conducted according to the law relating to municipal elections; that if disapproved by one section, it should still be effective as to the other; that the district should have authority to take the property of the defendant by the right of eminent domain, by petition therefor to the county commissioners; that the county commissioners should fix the valuation of the property and file their report "in the clerk's office for the county of Oxford;" that a justice of the Supreme Judicial Court, in term time or vacation might confirm, reject or recommit the report; that the procedure, and all subsequent proceedings and right of appeal

thereon should be had under the same restrictions, conditions and limitations as are by law prescribed in the case of damages by the laying out of highways.

The district took the property as provided by the act.  The county commissioners fixed the value of the property, and filed their report in the office of the clerk of the Supreme Judicial Court for Oxford County.

Upon proceedings to determine the validity of the proceedings, it is

*Held:*

1.  That the act is constitutional.

2.  That the requirement that the special meetings of the two sections should be warned according to the law relating to municipal elections was complied with when they were warned in accordance with the statutory provisions for warning town elections.

3.  That the act, being approved by one section, became effective as to that section.

4.  That the report of the county commissioners was properly filed in the office of the Clerk of the Supreme Judicial Court.

5.  That the act gave the Bridge Company a right of appeal from the award of the county commissioners, to be exercised within the time limited by statute in case of assessment of damages occasioned by the laying out of highways.

6.  That in case of a seasonable appeal, further action upon the report of the county commissioners by a justice of the Supreme Judicial Court should be stayed until the amount of damages is determined on appeal.

7.  That, if no seasonable appeal be taken, hearing is to be had on the affirmance, rejection or recommital of the report, as provided by the act.

Proceedings under chapter 166 of Private and Special Laws of Maine, 1915.

Case stated in opinion.

*Lucian W. Blanchard,* for plaintiff.

*Bisbee & Parker,* for defendant.

SITTING:  SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

SAVAGE, C. J.  By chapter 166 of the Private and Special Laws of 1915, the plaintiff district, which includes that part of Rumford known as the Rumford Village Corporation, and certain described territory in Mexico, was incorporated as a public municipal corporation for the purpose of acquiring by the exercise of the right of eminent domain, or by purchase, the toll bridge, approaches and

toll house, and franchises of the defendant. It was provided that the act should take effect when approved by a majority vote of the legal voters of the two sections of the district, voting separately at special meetings, to be called for the purpose. It was further provided that if the voters in the Rumford section should refuse to approve the act, and the voters in the Mexico section approved it, the act should apply to the Mexico section only. Meetings were held in the two sections. The Rumford section refused to approve the Act. The Mexico section approved it. Thereupon, the municipal officers of Mexico, as provided in the Act, organized the plaintiff corporation by appointing trustees.

By section 5 of the Act, the district was authorized to buy, and the company to sell, the bridge property. The district was also authorized to acquire the property by the exercise of the right of eminent domain. If the parties should agree upon the terms of purchase, no further statutory proceedings were necessary. But if not, the procedure for acquiring the property was prescribed by section 6. That section provided that in case the parties failed to agree upon the terms of purchase, the district might take the property "by petition therefor to the county commissioners of Oxford county wherein said company and its mortgagees shall be parties defendant." The parties did not agree upon terms of purchase, and the district filed its petition to the county commissioners, as provided by section 6, and thereby took the bridge property. And the proceedings so far, since, have been under section 6. This the record clearly shows.

Section 6 further provided that: "Such petition shall not be dismissed after filing, but may and shall be amended in any manner required to enable the court to make all necessary decrees thereon. The county commissioners of Oxford county shall, after due notice and hearing, fix the valuation of said toll bridge, approaches, toll house and franchises of said defendant company at what they are fairly and equitably worth. . . . The report of the commissioners of Oxford county shall be filed in the clerk's office for the county of Oxford within three months after their hearing and determination. After said report is so filed, any single Justice of the supreme judicial court, either in term time or vacation, after notice and hearing, may confirm or reject said report, or recommit

it, if justice so requires. The award of the county commissioners, or committee in case of an appeal, shall be conclusive as to valuations."

The county commissioners assessed the damages on February 15, 1916, and filed their report in the office of the clerk of the supreme judicial court for Oxford county. At the following March term of that court, the defendant filed a motion to dismiss the report for three reasons, namely:—First, because the Act is unconstitutional and void; secondly, because the Act never became operative, inasmuch as that section of the district, known as the Rumford Falls Village Corporation never approved, nor refused to approve, the Act; and lastly, because the commissioners' report was illegally and improperly filed in the office of the clerk of the supreme judicial court. At that stage of the proceedings the case was reported to this court. If the Act is unconstitutional, or inoperative, or if by failure to have the report filed in the proper office, the plaintiff has lost the benefit of the proceedings, the cause must be dismissed. Otherwise it must be remanded for further proceedings in accordance with the statute.

1. That the Act is constitutional, we entertain no doubt. Whether the public exigency requires the taking of private property for public uses is a legislative question, the determination of which by the legislature is final and conclusive. Whether the use for which such taking is authorized is a public use is a judicial question for the determination of the court. *Kennebec Water District* v. *Waterville,* 96 Maine, 234; *Brown* v. *Gerald,* 100 Maine, 351; *Bowden* v. *York Shore Water Co.,* 114 Maine, 150. In this case the Legislature has determined that a public exigency exists. And that the use of a bridge as a part of a highway is a public use admits of no debate. In all legal aspects, bridge districts are like water districts. They are all public municipal corporations. They all hold their property for public uses, and may, when authorized by the Legislature, take private property for such uses, by exercising the right of eminent domain. The case of *Kennebec Water District* v. *Waterville,* supra, is entirely analogous to the case at bar, and the doctrines declared in that case are controlling in this one.

2.  The contention that this Act never became operative is based upon the claim that that section of the proposed district, known as the Rumford Falls Village Corporation has never legally approved, or refused to approve, the Act.   It is properly urged that some action on the part of that section, either to approve, or to refuse to approve, was made, by the Act itself, a prerequisite to its becoming operative.   It is admitted that a meeting of the voters in the Rumford Falls Village Corporation was called and held, and that, by a majority vote, approval of the Act was refused.   But it is claimed that the meeting was not legally warned.   The Act provided that the meetings should be called respectively by the selectmen of Mexico, and the assessors of the Village Corporation, and that they should be "called, warned and conducted according to the law relating to municipal elections."   A similar phrase is found in many of the charters for water districts, which were submitted to the voters for approval.   In *Kittery Water Dist.* v. *Water Co.,* 103 Maine 25, it was held that; under a similar provision, Chapter 4 of Revised Statutes relating to town elections applied and controlled.   But the defendant urges that the Village Corporation was itself a municipal corporation, and contends that, by clear implication, the Legislature intended that the meeting in the territory of that corporation should be warned according to the law relating to that corporation, namely, its special charter.   The charter of the Village Corporation requires that a copy of a notice of a meeting of the corporation shall be published in some newspaper "seven days at least, before the time appointed for such meeting."   The statute relating to town elections does not require any such publication.   In this case, such a notice was published, but only two days before the meeting.   And this is the only infirmity suggested.   It is not claimed that the meeting was not warned in all respects according to the laws relating to town elections.

We think the defendant's contention is not tenable.   First, it may be observed that if the Legislature intended that the meeting within the Village Corporation should be warned according to its special charter, it did not say so, at least, not expressly.   There is a general law for warning town meetings.   There is this special law for warning meetings of this corporation.   Had the Legislature intended that the special method should be used rather than

the general one, we should naturally expect it to say so.   Again, the Act uses the same language with reference to warning the meeting in Mexico, and the meeting in Rumford.   It used a single phrase applicable to both.   So far as words go, both meetings were to be warned in the same manner, namely, "according to the law relating to municipal elections."   That required the meeting in Mexico to be warned according to the law relating to town elections. *Kittery Water Dist.* v. *Water Co.,* supra.   Was the Rumford section required by the same language to employ a different method?   We do not think the language is open to such a construction.   What the Legislature has joined we are not at liberty to sunder.

3.   Section 5 of the Act required that the report of the county commissioners should "be filed in the clerk's office for the county of Oxford."   The report was in fact filed in the office of the clerk of the supreme judicial court.   The defendant contends that "clerk's office" means the office of the county clerk, or clerk of the county commissioners, and therefore that no report has yet been filed in accordance with the Act.   Since the clerk of the supreme judicial court is ex-officio county clerk, R. S., ch. 80, sect. 6, and the same office suffices for him in both capacities, the objection seems technical.   Yet we are not disposed to say that it is of no importance.   The duties of the clerk in the two capacities are entirely distinct, and his records separate and independent.   Though only one person, property is sought to be taken away from its owner by condemnation proceedings, all the acts prescribed by statute as necessary to be done, must be done, or the proceedings are void.

We think, however, that the report was filed in the right clerk's office.   The county commissioners did not act strictly as such.   They were a special tribunal created by the Act.   When their report was filed they had nothing more to do with the matter.   All subsequent proceedings were to be had in the supreme judicial court.   A Justice of that court had jurisdiction to affirm, reject or recommit their report.   It would be a singular situation indeed for a judge of one court to be acting upon a report filed and pending in another court. The Act evidently intended that the report should be filed in the office of the clerk of the court which was to act upon it.

In reaching this conclusion, we have not overlooked section 3 which provides that,—"If said bridge company and said district shall not mutually agree upon the sum to be paid therefor, either party upon petition to the county commissioners of the couny where said bridge, approaches, and toll house are situated may have damages assessed by them. The procedure, and all subsequent proceedings and right of appeal thereon shall be had under the same restrictions, conditions and limitations as are or may be by law prescribed in the case of damages by the laying out of highways." It is by reason of this section that the defendant contends that the report should have been filed in the office of the county clerk. But as we have said, the record shows clearly that the proceedings have been had under section 6, and that section we have construed to require the filing of the report in the office of the clerk of the supreme judicial court.

It is expedient to notice one more question, since the case must go back for further proceedings. The defendant claims that it has the right to appeal. The petitioner denies the right. The statute is somewhat crudely and clumsily drafted. It is not easy to construe all the provisions so as to make them harmonious. But the intendment of the Act is, we think, reasonably certain. Although the procedure is prescribed by section 6 which does not expressly include a right of appeal, section 3 cannot be disregarded. That section recognizes the right of appeal. Even section 6 inferentially recognizes it by its reference to the award of a "committee in case of appeal." We think it evident that the Act was intended to give the defendant a right of appeal, to be exercised subject to the limitations of time prescribed by section 3. And that section expressly made the right of appeal subject to the limitations prescribed in the case of damages by the laying out of highways.

To sum up, we hold that the bridge district act is constitutional and operative; that the plaintiff district has been legally organized; that it has taken the proper steps for taking the bridge property, and for having the valuation fixed; that the report of the county commissioners was properly filed, and that thereupon the defendant had the right of appeal to be exercised seasonably within the statutory limitation.

Whether the right of appeal has been exercised at all, and if so, whether it was done seasonably, are not made to appear in the record. If a valid appeal be taken, further proceedings on the report should be stayed until the amount of damages is determined on appeal in accordance with the statute in case of land damages in road cases. If no appeal be taken, hearing is to be had on the affirmance or rejection of the commissioner's report, as provided in section 6.

> *Remanded for further proceedings*
> *in accordance with the opinion.*