INHABITANTS OF WHITING *vs.* INHABITANTS OF LUBEC.

SAME *vs.* SAME.

Washington.    Opinion February 9, 1922.

*The property of the State and that of its governmental divisions is presumptively*
*immune from taxability, whether situated within or without the territory by which*
*it is owned in absence of legislation to the contrary, and is free from taxation*
*when used for public benefit.    The State, however, may by legislation*
*subject its own property and that of its political subdivisions to*
*taxation, such power being an essential attribute of sovereignty,*
*and not a constitutional grant, but subject to constitutional*
*requirements or prohibitions, both Federal and*
*State.*

In absence of legislation to the contrary, the property of a municipal corporation
used for the public benefit is free from taxation, whether it be within or without
the territory by which it is owned.

But it is clearly within the absolute discretion of the State to subject its own prop-
erty, and that owned by its political subdivisions, to the tax laws, in common
with other property.

On report by an agreed statement.    These two actions of debt
were brought by plaintiff town to recover of defendant town taxes
assessed for the years of 1920 and 1921 on property owned by plaintiff
and situated in the defendant town.    Plea the general issue and a
brief statement under which it was alleged that the property upon
which said taxes were assessed was exempted from taxation under
the statute.    By agreement of the parties both cases were reported to
the Law Court, upon an agreed statement of facts, for the determin-
ation of the rights of the parties.    Judgment in each case for plaintiff.

The cases are fully stated in the opinion.

*C. B. & E. C. Donworth*, for plaintiffs.

*J. H. Gray, and H. E. Saunders*, for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

DUNN, J.   If one incorporated town own .property in another, employing it adjunctively in supplying light and water to its citizens, as well as in furnishing its own similar corporate wants, is such property subject to general taxation by the authorities having jurisdiction within the locus where it is situated?   So is the question broadly stated.   A negative answer would find ready expression, had the Legislature not spoken.   Analysis makes evident the purpose of the statute to qualify the otherwise prevailing rule.   Laws of 1911, Chapter 120.

Taxation is an essential attribute of sovereignty.   These words, when run down to their last retreat, define a power limited only by positive requirements or prohibitions in the Constitution of the United States or that of this State.   No general discussion of the subject of taxation need be here attempted.   Sufficient it seems to be to say, by way of stressing what already has been herein said, that the competency of the law-making branch of the government concerning this topic, though it knows constitutional bounds, does not seek its source in a constitutional grant.   Thus recognized in scope, it is patent that the question of whether it be wise or unwise, fit or unfit, to prescribe that certain kinds and classes of property shall bear taxation, and that other kinds and classes shall not, is for the determination, not of the judiciary, but of the legislature.   *Brewer Brick Company* v. *Brewer*, 62 Maine, 62; *Opinion of Justices*, 102 Maine, 527; *Sawyer* v. *Gilmore*, 109 Maine, 169; *Laughlin* v. *Portland*, 111 Maine, 486.   The public property of the state and that of its governmental divisions is presumptively immune from taxability; *Camden* v. *Camden Vil. Corp.*, 77 Maine, 530; *Somerville* v. *Waltham*, 170 Mass., 160.   This immunity does not result from a want of power in the legislature.   Dillon Mun. Corp., Section 1396.   It rests upon the implication that, when property is held by a body politic for an essentially public purpose, it is not to be presumed that the legislature intended to tax it.   *Camden* v. *Camden Vil. Corp.*, supra; *Worcester County* v. *Mayor of Worcester*, 116 Mass., 193.   There is little or no dissension in the authority but that, in the absence of legislation to the contrary, the property of a municipal corporation used for the public benefit is free from taxation, whether it be within or

without the territory of the municipality by which it is owned. *Camden* v. *Camden Vil. Corp.*, supra; *Somerville* v. *Waltham*, supra; *Wayland* v. *County Comm'rs.*, 4 Gray, 500; *Worcester County* v. *Mayor of Worcester*, supra; *Rochester* v. *Rush*, 80 N. Y., 302; *Trustees* v. *Trenton*, 30 N. J. Eq., 667; *New Castle Common* v. *Megginson* (Del.), 77 Atl., 565, An. Cases 1914A, 1207; *West Hartford* v. *Water Comm'rs*, 44 Conn., 360; *People* v. *DeWitt*, 69 N. Y. Sup., 366; *People* v. *Board of Assessors*, 111 N. Y., 505, 2 L. R. A., 148; *State* v. *Gaffney*, 34 N. J. L., 131; *Sumner County* v. *Wellington* (Kan.), 60 L. R. A., 850; *Com.* v. *Covington*, (Ky.), 107 S. W., 231, 14 L. R. A., (N. S.), 1214; *Smith* v. *Nashville* (Tenn.), 7 L. R. A., 469; *Schuylkill County Directors* v. *North Mainheim Directors*, 42 Penn., 21; *Stine* v. *Mobile*, 24 Ala., 591; *Foster* v. *Duluth*, 120 Minn., 484, 140 N. W., 129. But it is clearly within the absolute discretion of the state to subject its own property, and that owned by its political subdivisions, by its arms and by its instrumentalities, to the tax laws, in common with other property. Cooley on Taxation, 263; *Trustees* v. *Trenton*, supra; *Wayland* v. *County Comm'rs*, supra; *Foster* v. *Duluth*, supra. The right of the state to tax is always presumed.

The case in hand, as set out in facts agreed, in this: Lubec, a Washington County town, is empowered to furnish water and light for public and private consumption. It has been so providing water since about 1901; the lighting dates more recently. Public and Special Laws, 1901, Chapter 489; Public and Special Laws, 1919, Chapter 47. In the town of Whiting, approximately twelve miles away, is certain land with a waterfall upon it. There and thereabouts are a dam, a penstock and buildings, machinery and other estate, adapted and used for generating electricity. Transmission lines run thence to and throughout Lubec, where the current traversing them makes public and private lighting conveniently available. Besides, it affords motive power for the water-pumping station; superseding steam. The development in Whiting has been by Lubec, beginning around April 1st, 1920, when it entered into possession of an old mill and its privilege, as a nucleus of the present plant. At first, occupancy was under a contract of leasehold and for purchase. In the next year, Lubec bought the fee of this and contiguous real estate. In 1920, and again in 1921, the Lubec property intramarginal Whiting was taxed in the latter town. These actions are to enforce collection of the taxes. Plaintiff's insistence is that the Legislature, by restrict-

ing nontaxability of the property of public municipal corporation to

(1) that located within their respective territories and appropriated to public uses;

(2) the pipes, fixtures, hydrants, conduits, gate-houses, pumping stations, reservoirs and reservoir dams, located beyond their limits, used in supplying water, power, or light, devolved on the assessors in Whiting the doing of that which they did. Laws of 1911, Chapter 120. Defense goes only to the propriety of the assessments; regularity otherwise being conceded. . .

Blackstone regarded the principle of law as well settled that the crown is not bound by a statute, the words of which tend to restrain or diminish any of his rights or interests unless he be specifically named therein. 1 Blk. Com., 262. Like principle applies in favor of the states, in the United States. End. Inter. Stat., Sec., 161. In our own reports, Justice EMERY says: "However general and comprehensive the language, the state, the people, the public, is not to be considered as bound, unless expressly named." *Goss* v. *Greenleaf*, 98 Maine, 436. In Massachusetts: "When land is . . . . held for a public purpose, it shall be exempted from taxation in the absence of any express statutory provision to the contrary." *Milford Water Co.* v. *Hopkinton*, 192 Mass., 491. Chancellor Kent: "Statutes limiting rights and interests are not to be construed as embracing the sovereign power of government unless the same be expressly named therein, or intended by necessary implication." 1 Kent (13th Ed.), 460. Courts elsewhere thus state the proposition, in essence: where the legislature has made express provision for the exemption of certain classes of public property, the inference is clear that it did not intend that other classes should be exempt. *Gate City Guards* v. *Atlanta*, (Ga.), 39 S. E., 394, 54 L. R. A., 806; *Sanitary Dist.* v. *Martin*, (Ill.), 50 N. E., 201, 64 A. S. R., 110.

Under a statute providing that the property of a municipal corporation should be tax free, except the portion not owned within the corporation limits, it was held in New York that real estate owned by a city but located in another place, and used as a necessary adjunct to its waterworks system, was subject to taxation. *City of Rochester* v. *Coe*, 49 N. Y. Sup., 502. This decision is affirmed without opinion in 157 N. Y., 678, the appellate court saying, in an earlier case in the same volume, that such part of the waterworks system of a municipal corporation as is outside of the corporate limits is subjected to taxa-

tion where located.  *City of Amsterdam* v. *Hess*, 157 N. Y., 42.  A general tax law in that State so subjected it.  *People* v. *DeWitt*, supra.

It is sound principle that, in the interpretation of public statutes, the state and its political subdivisions shall be regarded as excluded unless included by positive legislation.  Dillon Mun. Corp., Section 1396, and cases cited.  The distinction in the cases is not more marked than is that between denotation and connotation.  But the 1911 statute, though applicable to the situation in hand, is not all inclusive.  Using the word "exemption" for rhetorical ease, rather than in strict accuracy,—for "exemption" presupposes a liability to taxation, whereas public property is free therefrom till the legislature speaks,—yet exemption to some extent is still attendant in cases like that here.

Taxation is the general rule, urges the plaintiff.  And, from Judge Cooley's work on the subject, counsel quotes:

"Where a municipality holds property not for governmental purposes, but for the mere convenience of its people, or to supply some need such as water or light which is commonly supplied by a private corporation, the presumption of an intention to exclude such property from taxation would be very slight."

Hence a rule of strict construction is invoked.  But the recital is stopped too short.  Taxation is the general rule as applied to private property, is the full text of the maxim.  Tax laws, to speak in a general way, are understood and intended to apply to private, not to public property.  End. Inter. Stat., Section 163.  The great text-book, whose page was sought to buttress argument, is always, in matters of this import, somewhat in the nature of an opinion of a court of last resort.  From where counsel paused in quotation, it immediately continues on:

"Such property is deemed, as is said in one case, to be held by the corporation in its social or commercial capacity as a private corporation, and for its own profit, but this unless confined to special assessments, would seem to be limiting the implied exemption unreasonably, and certainly more than other cases limit it."

Cooley on Taxation, 267, citing, among others, the case of *Camden* v. *Camden Vil. Corp.*, supra.

Even the rule of strict construction will not be so closely followed as to make unreasonableness.  Often has it been stated in effect, that

the intention of the legislature is the law.   Novelty may have gone from this expression but cogency is with it yet.   Though the language of the law is inartificial, nevertheless, the real purpose of the legislature, if that purpose be discernible from its statute, will prevail over the literal import of the words employed.   There is nothing hallowed about the rule of strict construction; there should be nothing wrongful.   Nor is it purely mechanical.   It is a very practical rule.   Its oneness of aim is to effectuate, never to thwart, legislative intention. In the main it works well.   Being a good rule it will work both ways. When it would be destructive of legislative intent, then the reason for using it ceases.   Reasoning and judgment, not the mere bald literalness of statutory phrasing, must guide and control research for a judicious legislative design.

The Legislature has spoken in words not shaded by a meticulous precision.   Its language, though at a first reading it be a trifle indistinct, does not leave meaning unascertainable.   Free to act, as the public interest seemed to require, the Legislature limited tax exemption on the part of municipal corporations to property within their corporate limits.   Then it broadened exemption by defining what one municipal corporation might own in another, tax free, joining its waterworks system.   To this point intention is plain.   The "pipes, fixtures, hydrants, conduits, gate-houses, pumping stations, reservoirs, and dams used only for reservoir purposes, of public municipal corporations engaged in supplying water  .  .  .  " shall not be subjected to tax.   What else?   The same accessories of power and light systems.   The descriptive words are not now as appropriate.   The act, as originally drawn as a bill and presented to the Legislature, may have embraced water systems only; "power and light" may have come in by way of amendment.   Be this how it may, the term "fixtures" in the statute is wide-reaching.   A fixture is that which was once a chattel, but which, by being affixed to realty or appurtenances, at least by juxtaposition, for use in connection therewith, has become part and parcel of it.   *Farrar* v. *Stackpole,* 6 Maine, 154; *Roderick* v. *Sanborn,* 106 Maine, 159; *Squire* v. *Portland,* 106 Maine, 234.   Factory machinery is a fixture.   *Hinkley Co.* v. *Black,* 70 Maine, 473.   The machinery and articles constituting a marine railway are fixtures.   *Strickland* v. *Parker,* 54 Maine, 263.   So, too, are telephone posts and insulators in a public highway, *Readfield Tel. Co.* v. *Cyr.,* 95 Maine, 287; and conduits, *Portland* v. *New England*

*Tel. Co.*, 103 Maine, 240; and an electric light dynamo with appur-
tenant machinery installed by an electric light company, *Gunderson*
v. *Swarthout*, (Wis.), 80 N. W., 465.

The real estate acquired by Lubec outside its territorial limits is
taxable. But, in appraising the property, for the purpose of assess-
ing a tax, the enumerated items in the statute, from pipes to reservoir
dams both inclusive, should not be regarded as constituent portions,
were the system merely a water-works. In the case of the light
station, the "fixtures, conduits, gate-houses, reservoirs, and dams
used only for reservoir purposes," to the extent that there be such,
must likewise be excluded. And so as to its power station. The
argument that Lubec's legislative authorization does not extend to a
power-plant is not overlooked, but the general statute rules this case;
and, moreover, Lubec, as the agreed facts say, has a power-plant in
combination with an electric light station in Whiting. In any event,
whether it be ultra vires the corporation of Lubec to have a power-
plant is pointless here. If that town be transcending rightful power,
there is a remedy, according to the nature of the case. It is not
intended to imply, that if more electricity is generated than is required
at all times for lighting purposes,—regard being had to probable
reasonable demands therefor,—that the incidental use of it mechani-
cally, until needed for lighting, would derogate from the principal
character of the station. *Kaukauna Water Power Company* v. *Green
Bay Canal Company*, 142 U. S., 254, 35 Law Ed., 1004; *State* v.
*Newark*, 54 N. J. L., 62, 23 Atl., 129; 20 C. J., 575.

On April 1st, 1920, the defendant town was in possession of the
premises as a tenant. For purposes of taxation a person in possession
may be considered as the owner. R. S., Chap. 10, Sec. 9. The tax
was laid, in the sum of $80.00, on the Crane mill and water power
privilege. Water power as such is not taxable; land with a mill
privilege on it is. *Union Water Power Co.* v. *Auburn*, 90 Maine, 60;
*Saco Water Power Co.* v. *Buxton*, 98 Maine, 295; *Penobscot Chemical
Fibre Co.* v. *Bartley*, 99 Maine, 263. But sufficiency of the assessment
is granted. The "mill and privilege" then were the beginning of a
lighting station, with neither of these parts exempted from taxation.
A year later the defendant was in possession as absolute owner of
both the original and other property, as a completed station. Under
the agreed facts, the lands and privilege, and the mill dam thereon,
are taxable; the amount of the tax is $112.50. The power-house is

taxable; the tax being $90.00. The penstock, a huge pipe through which water runs from the dam to the power-house, is a fixture. The generator and other machinery, and as well the transmission lines, are fixtures. Fixtures are exempted.

As affecting the question of costs, the bringing of these actions was authorized. (R. S., Chap. 11, Sec. 64), and demand for payment, made before the commencement of each, was refused. Idem.

The entry will be

> *Judgment for plaintiff, in each case.*
> *In that for 1920, the debt amounts*
> *to $80.00; in the other, to $202.50.*
> *Interest shall be computed from*
> *the date of the respective writs, and*
> *costs taxed and allowed.*