**Henry B. FINKS and Nancy C. Finks**

v.

**MAINE STATE HIGHWAY COMMISSION
et al.**

Supreme Judicial Court of Maine.

Nov. 21, 1974.

Seymour Nathanson, Portland, for plaintiffs.

Preti & Flaherty, by David M. Cohen, John J. Flaherty, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD, and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

The defendant, Maine State Highway Commission (Commission), on or about April 8, 1969 caused to be recorded at the Cumberland County Registry of Deeds a "Notice of Layout and Taking" pursuant to 23 M.R.S.A. §§ 153 and 154 for the purpose of acquiring for the State of Maine easement rights in and to certain lands of the plaintiffs in Falmouth, Maine as part of a comprehensive plan to "preserve and develop the natural scenic beauty along and adjacent to any state or state aid highway (State Highway–295) to integrate the public improvement with the aesthetics of the area traversed by the highway" as authorized by 23 M.R.S.A. § 651. The individual defendants are the members of the Commission. By complaint dated May 27, 1969 the plaintiffs sought injunctive relief against the taking on the ground that the enabling legislation was unconstitutional on its face or, if constitutional, did not sanction the condemnation of any part of the plaintiffs' land, nor did it permit a taking of such magnitude as was done in this case. The issue is before us on report pursuant to M.R.C.P., Rule 72(b) for this Court to render such decision as the rights of the parties may require.

The statute, authorizing the taking of the plaintiffs' land by eminent domain, under which the Commission purported to act and entitled an Act Relating to Roadside Beautification, was passed by the Legislature in 1965 (P.L.1965, c. 295) as an emergency measure in recognition of the fact, as stated in the preamble, that

"efforts on the national level are being made to beautify the roadsides of highways under the program of the President of the United States to beautify America; and

"* * * the following legislation is vitally necessary to implement this program in Maine in the spring and summer of 1965 for the benefit of the inhabitants of Maine and our summer visitors who use our highways; . . . ."

As amended by the 1965 and 1966 legislation (P.L.1965, c. 295—P.L.1966, c. 492, § 1) the law on eminent domain at the time of the taking of the plaintiffs' land read in pertinent part as follows:

23 M.R.S.A. § 153:

"The State Highway Commission, on behalf of the State of Maine, may take over and hold for the State of Maine, such property as it may deem necessary to:

1. *State and state aid highways.* Lay out and establish, construct, improve or maintain, or to provide a change of location or alignment of, or to provide drainage for state and state aid highways.

2. *Roadside development. Provide* rest areas, parking strips, *roadside and landscape development for the preservation and development of natural scenic beauty.*

3. *Safety of public.* Provide for the health, safety and welfare of the public using any state or state aid highway.

\* \* \* \* \* \*

. . . . . ."

(Emphasis supplied)

23 M.R.S.A. § 651:

"*The commission may preserve and develop the natural scenic beauty along and adjacent to any state or state aid highway to integrate the public improvement with the aesthetics of the area traversed by the highway and may establish and maintain rest areas, turnouts and parking strips for the suitable accommodation of the public whenever in its judgment the public exigency may require.*" (Emphasis added)

## I

## PRESERVATION AND DEVELOPMENT OF SCENIC BEAUTY ALONG HIGHWAYS A PUBLIC USE

■ It is fundamental law that the exercise of the State's power of eminent domain, to come up to constitutional requirements, must be for a public use and upon public exigency. Article I, § 21 of the Constitution of Maine provides:

"Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

The Constitution of the United States, Amendment XIV, mandates:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; * * *"

Thus, as a threshold issue, we must decide whether the taking of land beyond the right of way of a state highway, as provided by the Act, for the purpose of preserving and developing the natural scenic beauty along, and adjacent to, the highway is a valid public use justifying the State's exercise of the power of eminent domain. If such is a public use, then the Act is constitutional on its face, otherwise not.

■ In Wes Outdoor Advertising Company v. Goldberg, 1970, 55 N.J. 347, 262 A.2d 199, at 202, the New Jersey Court had this to say:

"We have no hesitancy in stating that the restoration, preservation and enhancement of scenic beauty adjacent to public highways is a public use for the public welfare, filling a social need of our times."

In Kamrowski v. State, 1966, 31 Wis.2d 256, 142 N.W.2d 793, at 797, the Wisconsin Court expounded in similar fashion:

"More importantly, however, we consider that the concept of preserving a scenic corridor along a parkway, with its emphasis upon maintaining a rural scene and preventing unsightly uses is sufficiently definite so that the legislature may be said to have made a meaningful decision in terms of public purpose, and to have fixed a standard which sufficiently guides the commission in performing its task."

We fully agree.[1]

## II

## LEGISLATIVE DETERMINATION OF PUBLIC EXIGENCY

The plaintiffs contend that the reference statute is unconstitutional on its face, because, nowhere in the Act, does the Legislature specifically declare that there is a

---

1. Nichols on Eminent Domain, Vol. 2A, Sec. 7.516. "It was felt in former times that land could be taken only to be used by the public for necessary and useful purposes and not for public pleasure and aesthetic gratification. Inroads on this doctrine have been made on all sides, partly by general acquiescence and partly by judicial decisions, until all that is left of it is the possibility that in a close case lack of material advantage to the public may be held to be decisive against the public nature of a taking." See also law review articles: Norman Williams, Jr., Legal Techniques to Protect and to Promote Aesthetics Along Transportation Corridors, 1968, 17 Buffalo Law Review 701, 705; Roger A. Cunningham, 1968, Scenic Easements in the Highway Beautification Program, 45 Denver Law Journal, 168, 232.

necessity in the public interest for the enactment of the provisions respecting highway beautification. Such an express legislative determination was incorporated in the Slum Clearance and Redevelopment Authority Law. See, Crommett et al. v. Portland, 1954, 150 Me. 217, 221, 107 A.2d 841, 845. But a legislative finding of public exigency or necessity may be established impliedly by the very enactment of the statute authorizing the taking. See, State v. Noyes, 1859, 47 Me. 189, 204; Hayford v. Bangor, 1907, 102 Me. 340, 343, 66 A. 731, 11 L.R.A.,N.S., 940. For other cases in which the principle of implied legislative judgment to establish public exigency was applied, see, Moseley v. York Shore Water Company, 1900, 94 Me. 83, 46 A. 809; Rumford & Mexico Bridge District v. Mexico Bridge Company, 1916, 115 Me. 154, 98 A. 625. See also, Smith v. Speers, 1969, Me., 253 A.2d 701.

It is true that section 651 does not speak in specific terms of *taking* for the purpose of preserving and developing the natural scenic beauty along and adjacent to any state or state aid highway, but, as stated in Rubin v. W. H. Hinman, Inc., 1969, Me., 253 A.2d 708, both sections 153 and 651 must be read in conjunction with each other.

■ Every statute must be construed in connection with the whole system of which it forms a part and all legislation on the same subject matter must be viewed in its overall entirety in order to reach an harmonious result which we presume the Legislature intended. Palmer v. Inhabitants of Town of Sumner, 1935, 133 Me. 337, 177 A. 711, 97 A.L.R. 1292; Inhabitants of Town of Amity v. Inhabitants of Town of Orient, 1957, 153 Me. 29, 134 A.2d 365.

■ Applying this rule of construction to these pertinent sections of the statute relating to the exercise by the Commission of the power of eminent domain in connection with the laying out and improvement of state and state aid highways, we readily discern that the preservation and development of the natural scenic beauty aspect of both sections 153 and 651, originally adopted together by the 1965 Legislature, was so intimately related to the Commission's right to take and hold property for the purposes enumerated as to evince an implicit finding by the Legislature of a public exigency.

### III

### LEGISLATIVE STANDARDS

■ The plaintiffs further press their claim that the statute, in its scenic beautification feature, is facially unconstitutional for failure to provide adequate standards to guide the Commission in its exercise of the delegated power of eminent domain. While we have recently expressed concern about standard-less delegations of power by legislative bodies,[2] we do recognize that,

---

2. Town of Windham v. LaPointe, 1973, Me., 308 A.2d 286; City of Biddeford v. Biddeford Teachers Ass'n., 1973, Me., 304 A.2d 387. Both of these decisions are readily distinguishable from the instant case. In *LaPointe*, we held unconstitutional an ordinance which vested unbridled discretionary power in the Selectmen and Planning Board of Windham to determine the location of trailer parks in the town. The ordinance required the approval of the Selectmen and the Planning Board for proposed trailer parks, but set out *no standard at all* by which their discretionary power might be limited. Moreover, the absence of specific standards to guide those to whom the power is delegated presents objections of a more serious nature in a zoning case such as *LaPointe*, since no compensation

is available to aggrieved parties. See, Roger A. Cunningham, Scenic Easements in the Highway Beautification Program, 1968, 45 Denver Law Journal, 168 at 234. In *Biddeford Teachers Ass'n*, the Court was evenly divided on the question, whether a statute creating a scheme for binding arbitration of disputes relating to working conditions and hours between teachers and school boards was an unconstitutional delegation of power. Undoubtedly, the fact that the statute delegated power to arbitrators who, unlike the highway commissioners in the present case, were not public officials and were "completely free to determine issues by the application of their own political, social or economic theories" was a major factor in the equal division of this Court on the issue. 304 A.2d at 402.

in some areas of legitimate and necessary legislative undertakings, it may not be feasible to supply precise standards to guide the discretion of the agency to whom the powers to take by eminent domain have been delegated, without frustrating the purposes of the particular legislation. We are of the opinion that, in such cases in which the statutory enactment of detailed specific standards is impossible, the presence of adequate procedural safeguards to protect against an abuse of discretion by the administrators of the law, compensates substantially for the want of precise legislative guidelines and may be taken into consideration in resolving the constitutionality of the delegation of power.[3]

Specifically, the plaintiffs contend that the statutory terminology "scenic beauty" and "along and adjacent" to a state or state aid highway provides an inadequate set of standards to control the discretion of the highway commissioners.

■ With regard to the statute's grant of power to the commissioners to acquire land along and adjacent to the highway "to provide roadside and landscape development for the preservation and development of natural scenic beauty" and "to integrate the public improvement with the *aesthetics* of the area traversed by the highway" (emphasis added), it would seem, and we so hold, that the concept—natural scenic beauty—, although more generally used in a subjective sense, connotes, in terms of highway beautification, a sufficiently definite concrete image when tested objectively so as to furnish in and of itself an adequate standard for the measurement of a proper exercise of discretion in a taking for such purposes.

The Legislature would be hard pressed to define in specifics the broad connotation which the expression "natural scenic beauty" conveys, and we thoroughly agree with

the New Jersey Supreme Court respecting the following observations:

"The Act contemplates that there is a certain basic beauty in natural terrain and vegetation unspoiled by the hands of man, which it proposes to recapture or maintain. Although the extent to which each individual finds a specific landscape beautiful must be determined by a subjective test, this does not denote that there is no catholic criterion for the ascertainment of whether *any scenic beauty* exists in a given panorama. 'Scenic beauty' is concerned with such manifold possibile situations that it does not lend itself to a more specifically detailed descriptive statement. A tabulation of the various possible elements constituting scenic beauty is well-nigh impossible." Wes Outdoor Advertising Company v. Goldberg, supra.

The plaintiffs' further contention that the statute is unconstitutional on its face for its failure to provide a more specific spatial standard for circumscribing a taking than the stated gauge of being "along and adjacent" to the highway might seem to present a more difficult problem. Indeed, the Legislature, if it had been so inclined, could have readily established a specific maximum distance from the highway right of way within which strips of property could be taken for their natural scenic beauty in the implementation of an integrated aesthetic highway improvement program.

However, the Legislature's choice of the less definite "along and adjacent" to the highway standard reflects a reluctance to impose an absolute limitation on the discretion of the commissioners which might in the unusual case prevent the fulfillment of the objectives of the Act.

■ At the time the Legislature enacted the statute under consideration it was well

---

3. See, Note entitled "Safeguards, Standards, and Necessity: Permissible Parameters For Legislation Delegations in Iowa," 1973, 58 Iowa L.Rev. 974, 996–999.

settled judicially that it could delegate without specific spatial constrictions the determination of the extent to which property may be taken in the exercise of the power of eminent domain, subject, however, to judicial review, if the determination of the necessity of the taking is made in bad faith or through an abuse of power. Hayford v. City of Bangor, 1907, 102 Me. 340, 66 A. 731, 11 L.R.A.,N.S., 940; Brown v. Kennebec Water District, 1911, 108 Me. 227, 231, 79 A. 907; Bowden v. York Shore Water Company, 1915, 114 Me. 150, 155, 156, 95 A. 779. See, In Re Bangor Hydro-Electric Company, 1974, Me., 314 A.2d 800, 803, 804; Rubin v. W. H. Hinman, Inc., supra, at page 711.

As stated in Brown v. Kennebec Water District, supra, "[t]here is no constitutional right on the part of the land owner to have the question of the necessity of the taking [including the extent thereof] submitted to a court or jury; and in the absence of any statutory authority for a determination or revision of the matter by the court, the decision of the Legislature or its chosen agents is conclusive."

Thus, our problem lies in the interpretation of the language of the reference statute as a whole. Whether the literal meaning of the words of an Act will control as against a broader or more narrow interpretation of their possible intendment depends upon the policy the Legislature is seeking to implement and the goals it intends to reach through such legislation. See, Emple Knitting Mills v. City of Bangor, 1959, 155 Me. 270, 153 A.2d 118; N.J. Gendron Lumber Co. v. Inhabitants of Town of Hiram, 1956, 151 Me. 450, 120 A.2d 560. Legislative intent, if ascertainable, must prevail and be given effect. Davis v. State, 1973, Me., 306 A.2d 127, 130; King Resources Co. v. Environmental Improvement Commission, 1970, Me., 270 A.2d 863, 869.

The statutory history of legislation upon a particular subject matter may be taken into consideration in ascertaining legislative intent. See, Hutchins v. Libby, 1953, 149 Me. 371, 103 A.2d 117. It is relevant in throwing light on its meaning. Hayes v. State, 1968, Me., 247 A.2d 101. The whole body of previous and contemporaneous legislation upon a particular topic should be considered in interpreting any statute. Cram v. Inhabitants of Cumberland County, 1953, 148 Me. 515, 96 A.2d 839; Merrill v. Crossman, 1878, 68 Me. 412, 414.

The Legislature is presumed to have in mind previous decisions of this Court when enacting statutes. Maine State Housing Authority v. Depositors Trust Co., 1971, Me., 278 A.2d 699, 708; State v. Crommett, 1955, 151 Me. 188, 194, 116 A.2d 614, 617. We must, therefore, assume that, in the passage of the 1965 highway beautification amendment to the general statute relating to the exercise of the powers of eminent domain for highway purposes, the Legislature enacted such legislation in the light of previous judicial interpretative decisions as had a direct bearing upon such statute. Blier v. Inhabitants of Town of Fort Kent, 1971, Me., 273 A.2d 732.

Therefore, we must conclude that the Legislature granted the State Highway Commission *"an unrestricted agency* to take by eminent domain [which] includes *the determination of the suitability of the property* for the particular public use (preservation of natural scenic beauty) and *the extent* to which the property must be taken to satisfy the exigency" (In Re Bangor Hydro-Electric Company, supra, at 803 with emphasis supplied), subject to the limitations inherent in the conceptual phrase "along and adjacent to any state or state aid highway" and subject to judicial review for any abuse of power in its exercise.[4]

4. The possibility of an abuse of power for want of more specific limitations on the exercise of the right to take by way of eminent domain was raised during the legislative process. See Legislative Record—House, May 12, 1965, p. 1995.

■ "To abuse power is to use it in an extravagant manner, to employ it contrary to the law of its use, or to use it improperly and to excess." Swenson v. Cahoon, 1934, 111 Fla. 788, 152 So. 203, 204.

Before it may be said that the Commission abused its delegated power in taking land areas to preserve and develop natural scenic beauty along our highways, there must be a determination of the legislative meaning which the Legislature meant to ascribe to the expression "along and adjacent" to any state or state aid highway.

■ Absent a legislative definition, the terms "along and adjacent" must be given a meaning consistent with the overall statutory context, and be construed in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation. Grudnosky v. Bislow, 1958, 251 Minn. 496, 88 N.W.2d 847.

The word "along" is defined by Webster and other lexicographers to mean "by the length of; *lengthwise of, implying* motion or *extension upon, or at* or *near, the side of,* according to the context" (emphasis added), while the word "adjacent" is said to signify "to lie near"; "close", or "contiguous"; "neighboring"; "bordering on."

In Martin v. Grand Trunk Railway, 1895, 87 Me. 411, 32 A. 976, this Court construed the statutory term "along the route of the railway" as including lands not in contact with, or contiguous to, the railroad right of way, but which were "so near as to be exposed to the danger of fire from the engine."

On the other hand, in Clark v. Coburn, 1911, 108 Me. 26, 78 A. 1107 the word "adjacent" was given its narrow meaning of "adjoining" or "contiguous" as reflecting the legislative intent in the context of the statute being construed. But the Court agreed that the term "adjacent" does not necessarily, nor even most frequently, mean "adjoining" or "contiguous."

Both words represent relative concepts and have no arbitrary meaning or definition and their interpretation in any particular case must be determined in the light of the object sought to be accomplished by the statutory provisions in which they are used. As stated in In Re Clark's Estate, 1955, Ohio Probate, 141 N.E.2d 259:

"Adjacent, it is said, conveys the idea merely of nearness, and not of immediate proximity. Its meaning is not restricted to the more confining words adjoining, contiguous to, contacting, touching, abutting, along, fronting, next to, attached, beside or bordering. Even the last above words do not necessarily imply that the things spoken of are in contact."

See also, Kampstra v. Salem Heights Water District, 1964, 237 Or. 336, 391 P.2d 641, 643; Watts v. City of Winfield, 1917, 101 Kan. 470, 168 P. 319, 321.

The plaintiffs contend for a narrow and strict interpretation against the Commission as the donee of the power of eminent domain in derogation of private right and cite Clark v. Coburn, supra, in support thereof. But, as stated in Whiting v. Lubec, 1922, 121 Me. 121, 115 A. 896:

"There is nothing hallowed about the rule of strict construction; there should be nothing wrongful. Nor is it purely mechanical. It is a very practical rule. Its oneness of aim is to effectuate, never to thwart, legislative intention. In the main it works well. Being a good rule it will work both ways. When it would be destructive of legislative intent, then the reason for using it ceases. Reasoning and judgment, not the mere bald literalness of statutory phrasing, must guide and control research for a judicious legislative design."

■ The true legislative purpose which the Legislature sought to accomplish by the highway beautification aspect of the eminent domain statutory provisions relating to the establishment or improvement of

state and state aid highways was, as specifically expressed, to integrate the public improvement with the aesthetics of the area traversed by the highway. This is the clue which the Legislature provided to manifest its intention. It is apparent that our Legislators, in their effort at beautifying our highway landscaping plan, recognized that it would be necessary, if the natural scenic beauty along our highways were to be maintained and developed, for the Commission to have the power to take lands on both sides of the highway, lands that were immediately in contact with the highway as well as lands that might not be contiguous, but so near as to be part of the panoramic area. It is obvious that the Legislature contemplated the taking of an area as distinguished from merely adjoining lots. So long as the taking, whether of a single parcel of land or of multiple parcels, results in one comprehensive area which is both contiguous to and near the highway, the end legislative result is reached. The only limitation is that the exercise of the power be not abused, as by reason of an unreasonable excessive taking or for arbitrary purposes inconsistent with the intent of the law.

As so construed we cannot say that the provisions of 23 M.R.S.A. §§ 153, 154 and 651 are unconstitutional on their face. Again, we agree with the New Jersey Court, when it said:

"Although the statute does not in finite terms impose a specific limit upon the amount of land which may be acquired, the express purpose of acquisition does delineate a sufficient guide for a reasonable exercise of the power of condemnation. In light of the objectives of the statute it is difficult to envision a more specific limitation which would not by expression or omission unduly restrict the Commissioner. The very purposes of the act require that he be granted a considerable degree of discretion." Wes Outdoor Advertising Company v. Goldberg, supra, at page 202.

See also, Kamroski v. State, supra.

## IV

## INSTANT TAKING AN ABUSE OF POWER

The plaintiffs have argued that the taking in this case, exceeding as it does 1400 feet from the highway right of way, is beyond the intended scope of section 651.

As noted previously, it is clear that, in choosing the indefinite "along and adjacent" standard, the Legislature deliberately eschewed imposing a rigid limitation on the Highway Commission, with a view towards allowing the Commissioners maximum flexibility to accomplish the objectives of the statute. On the other hand, the Legislature's selection of the "along and adjacent to the highway" concept indubitably indicates an attempt to place some spatial limitational control on the power of the Commission to take land for highway beautification. Otherwise, the "along and adjacent" language would be insignificant make-weight, leaving only the "scenic beauty" standard to limit the power of the Commissioners.

In the construction of a statute, nothing should be treated as surplusage, if a reasonable interpretation supplying meaning and force is possible. National Newark & Essex Bank v. Hart, 1973, Me., 309 A.2d 512, 520; United States v. A. S. Kreider Co., 1941, 313 U.S. 443, 61 S.Ct. 1007, 85 L.Ed. 1447.

The problem then lies in the interpretation, on a case by case basis, of the legislatively imposed limitation upon the taking of land, in this case concededly a natural scenic beauty area, whether the taking goes beyond the legislative mandate requiring the property taken to be along and adjacent to the highway.

Other states have enacted statutes to beautify highway roadsides in response to the national effort to beautify America, most of which limited takings for such

purpose to stated maximum distances from the highway right of way. The State of Idaho allows its highway commission to take up to 1,000 feet of land for highway beautification.[5] The Commonwealth of Pennsylvania permits its commissioners to acquire as much as 1,000 feet by gift or purchase for such purpose, but only up to 500 feet by eminent domain.[6] New York requires that any property for roadside beautification lying more than 660 feet from the highway right of way be acquired only by gift or purchase.[7] The taking in this case, which extends almost 1450 feet from the edge of the right of way, is thus nearly 50% greater than the maximum limit of any state which has fixed an absolute standard in such condemnations. In considering these varied limitations placed upon the right to take property by eminent domain for highway beautification purposes, we do not wish to imply that these maximum limits adopted by our sister States had a direct bearing upon the meaning of the "along and adjacent" standard with the Maine Legislature. However, they do represent the mature judgment of governmental bodies in their determination of the extent to which a taking of land for scenic vistas along highways would be reasonable. We must presume that our Legislators had somewhat similar objectives in their adoption of the flexible standard of "along and adjacent to the highway."

We can envision circumstances in which a taking of over 1000 feet of land by the Commission for highway beautification might be justified. Such might be the case if the shore of a lake or river might be somewhat beyond 1000 feet from the edge of the highway right of way. To take less than the full distance to the lake or river might leave a small area which, if not taken, could frustrate the very purpose of the Act.

The taking in the instant case in excess of 1000 feet from the edge of the highway right of way was unreasonable and an abuse of power. The record negates the existence of an unusual picturesque landscape on the fringes of the 1000 feet scenic highway border strip which, if not taken, would defeat the ends of this legislation. The land beyond 1000 feet is made up of marshland and tidal flats and is indistinguishable from the entire surrounding area. It presents no likelihood of future development inimical to the preservation of the scenic value of the capsulated view from the highway. There is no natural boundary within immediate reach, such as a river, lake or mount, to permit a reasonable extension of the taking and yet keep it within the scope of a sensible application of the concept of land along, and adjacent to, the highway.

We therefore, conclude that the taking in the instant case is excessive and beyond the intendment of 23 M.R.S.A. § 651. We believe that the Legislature used the "along and adjacent" language to curb in a meaningful way the discretion of the Highway Commission. In a taking exceeding 1000 feet, it must appear there existed compelling reasons to take the marginal excess to preserve the primary beauty scene.[8]

The entry will be

The taking of the Plaintiffs' land by the Maine State Highway Commission in the instant case for highway beautification is hereby declared excessive and beyond the scope of 23 M.R.S.A., §§ 153, 154, 651, and thus null and void.

---

5. Idaho Code Annotated, §§ 40–2801, 40–2802 (Supp.1974).

6. Pennsylvania Statutes Annotated, Title 36, § 670.413.1 (Supp.1974).

7. New York Highway Law, § 21 (McKinney's Consol.Laws, c. 25, Supp.1974).

8. Since we are disposing of the case on another ground, we do not reach the issue raised by the plaintiffs to the effect that the Wetlands Control Act vested exclusive control over their property, which consists primarily of marshes and tidal flats, in the Board of Environmental Protection under 12 M.R.S.A. § 4701 et seq.

Case is remanded to the Superior Court for entry of permanent injunction enjoining any further action by the Commission under said particular taking, together with appropriate order for registration in the Registry of Deeds.

WERNICK, J., did not sit.

All Justices concurring.