### STATE of Maine

v.

### Fred PINETTE.

Supreme Judicial Court of Maine.

Submitted on Briefs June 17, 1992.

Decided July 17, 1992.

---

William R. Anderson, Dist. Atty., Gregg N. Dorr, Asst. Dist. Atty., Bath, for plaintiff.

---

David J. Ferrucci, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

Fred Pinette appeals from a conviction of molesting lobster gear, 12 M.R.S.A. § 6434 (Supp.1991), entered in the Superior Court (Sagadahoc County, *Perkins, J.*) after a jury verdict. Contrary to his contention, we find that the evidence was sufficient to support the jury verdict and that the jury instructions did not constitute obvious error.

## I.

In November of 1990, Pinette gave Officer Mitchell, a Marine Patrol Officer with the Department of Marine Resources, permission to inspect one of his two floats near Robinhood Marina. The float held about 40–50 lobster traps. Officer Mitchell inspected the traps and found some that did not have Pinette's license number on them. Some of these traps contained ballast bricks painted red and orange, Pinette's colors.[1] Others contained black and white bricks. Pinette told the officer that he had been fishing the traps. With Pinette's permission, Officer Mitchell took two of the traps to compare with those belonging to Lester Savoie.

Savoie testified that he used black and white ballast bricks, "... the same color that's on my license." He identified the traps in question as belonging to him, based on their overall appearance, the color of the bricks and the rope and knots used.

He explained where and when he had purchased the traps and how his license number had been attached. He noted that the orange tags used to number some traps were removable and that he could see scratch marks where the numbers should have appeared on other traps.

Pinette testified that the traps with black and white ballast bricks had been given to him by another lobsterman. He also testified, however, that traps would occasionally "show up" on his float,[2] and that he had acquired at least one of the traps that way. He admitted to fishing the traps in question.

## II.

12 M.R.S.A. § 6434 provides that no one may use or possess a lobster trap unless he is the "licensed owner" or has the written permission of the "licensed owner."[3] There is no dispute as to whether Pinette "used or possessed" the traps, but he contends that it is legally impossible to prove that either he was not, or Savoie was, the "licensed owner" of the traps because that term is nowhere defined.

"Absent a legislative definition, the terms ... must be given a meaning consistent with the overall statutory context, and ... the purpose of the statute." *Finks v. Maine State Highway Comm'n*, 328 A.2d 791, 798 (Me.1974). The prohibition against molesting lobster gear is contained in Title 12, chapter 619, entitled "Lobster and Crab Fishing Licenses." The chapter regulates fishing for crab and lobster off the Maine Coast by requiring that all participants obtain a license and obey prescribed rules. It

---

1. Officer Mitchell testified that when an individual applies for a lobster fishing license, he indicates what colors he will use to mark his traps and buoys.

2. The manager of the Robinhood Marina testified that the Marina would untangle, cut or remove any lobster gear that became entangled in their moorings. If they could not identify the owner, they would leave the trap on one of Pinette's floats.

3. The statute provides, in full,

§ 6434 **Molesting Lobster gear**

No person may raise, lift, transfer, possess or in any manner molest any lobster trap, warp, buoy or car except as provided in this section.

**1. Permitted activities.** Lobster traps, warps, buoys and cars may be raised, lifted, transferred, possessed or otherwise molested by the following:

A. A marine patrol Officer;

B. The licensed owner;

C. Any person having written permission from the licensed owner; and

D. Any person authorized by rule pursuant to subsection 2.

is self-evident that the word "licensed" in § 6434 refers to the requirements of the preceding section in that chapter, § 6421, requiring certification in order to engage in lobster fishing.

The word "owner" as used in § 6434 is more enigmatic. In a 1955 case, we determined that the term owner in the predecessor statute was to be given a broad construction. *State v. Mitchell*, 150 Me. 396, 113 A.2d 618, 619 (1955) (lobsterman who found trap adrift with another's name and number became statutory "owner" when he fished the trap). A few months later, the legislature amended the statute to read, "No person except the *rightful* owner ... shall raise, lift, *transfer*, or in any manner molest any ... trap...." P.L. 1955, ch. 334 § 6 (emphasis in original). This amendment supplanted our broad definition. *See Finks*, 328 A.2d at 797 (Legislature is presumed to have in mind previous decisions of this Court when enacting statutes). It even tracked the language we used in *Mitchell*, 113 A.2d at 619 ("obviously, if 'owner' includes only the rightful owner, then the respondent must be found guilty").

 The statute, however, was amended in 1977. This time, the legislature substituted the word "licensed" for the word "rightful." P.L.1977, ch. 661, § 5. Pinette contends that this change revived the *Mitchell* interpretation of "owner." However, "a mere change in phraseology in the reenactment of a statute in a general revision does not change its effect unless there is evident a legislative intent to do so." *Mundy v. Simmons*, 424 A.2d 135 (Me. 1980). We decline to revert to a statutory construction explicitly rejected by the legislature. The term "licensed owner" refers to a rightful owner who is licensed to fish for lobster.

Pinette claims, in the alternative, that even if "licensed owner" is defined as above, the State failed to introduce evidence that Savoie was licensed. He concedes that Savoie's testimony was sufficient to establish that he was the rightful owner, but that there was no showing that he was licensed. Savoie, however, testified that he had been lobster fishing for a number of years, that the colors on the ballast bricks matched those on his license and that his license number was on the traps. This evidence is sufficient to raise the inference that Savoie was licensed.

### III.

Contrary to Pinette's second contention, the court's jury instructions did not constitute obvious error. See M.R.Crim.P. 52(b); *State v. Cote*, 462 A.2d 487 (Me.1983). Taken as a whole, the instructions do not reveal a tendency to mislead or confuse a jury, much less a "seriously prejudicial error tending to produce manifest injustice." *State v. Michaud*, 473 A.2d 399, 404 (Me. 1984).

The entry is:

Judgment affirmed.

All concurring.