**FRYEBURG NEW CHURCH
ASSEMBLY**

v.

**SACO RIVER CORRIDOR
COMMISSION.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1987.
Decided March 24, 1987.

Hastings & Son, P.A., David R. Hastings, III (orally), Fryeburg, for plaintiff.

Smith and Anderson, Glenn R. Anderson (orally), Hollis, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, GLASSMAN,
SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

The Fryeburg New Church Assembly (Assembly) appeals from the judgment of the Superior Court, Oxford County, affirming the denial by the Saco River Corridor Commission (Commission) of the Assembly's application for a permit to build a cabin on land located within the Limited Residential District of the Saco River corridor. On appeal, the Assembly contends the Commission erred in its finding that the Assembly's proposed cabin was not a necessary expansion or enlargement of a nonconforming use and in denying the Assembly's application for a building permit. Be-

cause we conclude that the Commission properly denied the Assembly's application, we affirm the judgment of the Superior Court.

The Assembly owns 11.5 acres of land in Fryeburg that is partially within the Saco River corridor as defined by the Saco River Corridor Act, 38 M.R.S.A. §§ 951–968 (Pamph.1986). Land within the corridor includes "land adjacent to (the Saco River) to a distance of 500 feet as measured on a horizontal plane from the normal or mean high water line of (the river) or to the edge of the 100–year floodplain if that extends beyond 500 feet, up to a maximum of 1,000 feet." 38 M.R.S.A. § 953. Development within the corridor is strictly regulated by the Act. The Assembly's land extends outside the corridor both within Maine and over the state border into New Hampshire. There are presently 19 buildings on the property. Since the late 1920's the Assembly has operated a religious summer camp on its premises.

In November 1985, the Assembly applied for a permit to construct a cabin for housing campers requiring privacy on a site in the Limited Residential District.[1] The application indicated that the Assembly owned 2,500 feet of frontage on the Saco River. Following a hearing on the application, the Commission granted approval for the construction subject to several restrictions. The Assembly petitioned for recon-

sideration by the Commission and submitted new information that it owned only approximately 1,000 feet of frontage on the Saco River.

After the reconsideration hearing, the Commission denied the Assembly's application on the grounds that: (1) the application is for the construction of a single family residence that did not meet the aggregate requirements of the Limited Residential District inasmuch as at least three existing single family residences currently exist on the lot,[2] and (2) the proposed structure is not a necessary expansion or enlargement of a nonconforming use.

The Assembly sought judicial review by the Superior Court. The Superior Court affirmed the decision of the Commission, and the Assembly appeals.

 Where, as here, the Superior Court's review has been confined to the record developed before the Commission, we directly examine that record to determine whether the Commission abused its discretion, committed an error of law or made findings not supported by substantial evidence in the record. *Kittery Water District v. Town of York*, 489 A.2d 1091, 1093 (Me.1985); *Keith v. Saco River Corridor Commission*, 464 A.2d 150, 153 (Me.1983).

 The Assembly asserts that the general operation of a summer camp on the

---

1. The Act establishes three discrete districts: the Resource Protection District, § 957–A; the Limited Residential District, § 957–B; and the General Development District, § 957–C. The Limited Residential District is "the residuary district and shall include all areas within the corridor which are not included in the Resource Protection or General Development Districts."

 Section 957–B(3)(E) provides in pertinent part:

 Uses within the Limited Residential District which may be allowed by permit shall include:

 ....

 E. Single family residences and accessory structures meeting all of the following performance standards:

 (1) The minimum lot frontage on the river measured at the normal or mean high water line shall be 100 feet;

 (2) The minimum setback of any building from the river shall be 100 feet from the normal or mean high water line;

 (3) The combined river frontage and setback of any building shall be not less than 500 feet;

 ....

 H. Necessary expansion or enlargement of nonconforming uses;

2. The parties agree that these three buildings predated March 19, 1974, and accordingly the site of the buildings and their use as well as the use of the land as a camp was "grandfathered" by the provision of section 958 that provides in pertinent part:

 Any existing building or structure or use of building or structure lawful March 19, 1974 ... may continue although such use of structure does not conform to this chapter or the regulations adopted hereunder. Any existing building or structure may be repaired, maintained and improved, but an existing building, structure or nonconforming use may be extended, expanded or enlarged only by permit from the commission.

land within the corridor is the "grandfathered" nonconforming use and the proposed cabin and its site within the Limited Residential District is a necessary expansion or enlargement of that "grandfathered" nonconforming use. We disagree.

Section 958 specifically provides that although any existing nonconforming building or structure or use of that building or structure lawful on March 19, 1974, may continue, a permit is required for the expansion, enlargement or extension of a building or structure or its use. The Assembly's application is not for a permit for the necessary expansion, enlargement, or extension of an existing nonconforming building or structure or the use of such building or structure. It proposes the erection of a new building within the Limited Residential District of the corridor. The Commission properly determined that the proposed structure did not meet the aggregate requirements of section 957–B(3)(E) that for each single family residence in the Limited Residential District there be a minimum lot frontage on the river of 100 feet and a combined frontage and setback of not less than 500 feet.

 The Assembly does not challenge the finding of the Commission that the Assembly owned land outside the corridor suitable for the location of the proposed building and that additional camping space on corridor land could be attained without the need to build the proposed residential structure. The Assembly had the burden of proving that the construction of the cabin within the corridor was a *necessary* expansion or extension of its nonconforming use of land within the corridor as a camp. *See* § 959–A (permits for uses allowed under this chapter granted on showing that all applicable standards and requirements established under this chapter have been met); *Long v. Town of Eliot*, 521 A.2d 1190, 1191–1192 (Me.1987).

The record amply supports the finding of the Commission and its decision that the proposed structure is not a necessary expansion or enlargement of a nonconforming use.

We conclude that the Commission properly denied the application of the Assembly for a permit to construct a new building on land within the Limited Residential District of the Saco River corridor.

The entry is:

Judgment affirmed.

All concurring.