**TOWN OF MADISON, et al.**

v.

**TOWN OF NORRIDGEWOCK.**

Supreme Judicial Court of Maine.

Argued May 6, 1988.
Decided July 25, 1988.

---

**318**

Peter H. Barnett (orally), Eames, Sterns & Washburn, Skowhegan, for plaintiffs.

Neal C. Corson (orally), Corson & Shusta, P.A., Madison, for defendant.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Defendant Town of Norridgewock appeals from a judgment of the Superior Court, Somerset County, exempting from property taxation a reservoir and dam owned by the Town of Madison and located in Norridgewock. The Superior Court overruled a decision of the Somerset County Commissioners holding that the property was subject to taxation. We affirm the judgment.

The Town of Madison and the Madison Electric Works, a department of Madison, together own and operate a hydroelectric generation facility consisting of land, a dam, a powerhouse, an electrical generator and their equipment, located on the Sandy River in the Towns of Starks and Norridgewock. In 1986, Norridgewock billed Madi-

son Electric Works for property taxes of $895.79, based on a valuation of $54,290, $6,000 for the land and $48,290 for the buildings located in Norridgewock. After the Town of Norridgewock had refused its abatement request, Madison appealed to the Somerset County Commissioners. *See* 36 M.R.S.A. § 844(1) (Supp.1987). After a testimonial hearing, the County Commissioners upheld Norridgewock's denial of the abatement, holding that the facility was not tax exempt under 36 M.R.S.A. § 651(1)(E) (1978). On Madison's appeal under section 844(1) and M.R.Civ.P. 80B, the Superior Court concluded that the reservoir and dam were exempt from taxation under section 651(1)(E) and vacated the decision of the County Commissioners.

There being no trial of the facts in the Superior Court, *see* M.R.Civ.P. 80B(d) and (f),[1] we review directly the decision of the County Commissioners. *Fryeburg New Church Assembly v. Saco River Corridor Comm'n*, 522 A.2d 1303, 1304 (Me.1987).

Although the record before the Commission is scant, the historical facts are not in dispute. The dam backs up water on the Sandy River, creating a reservoir of water used in the production of electricity. The water is not channeled or diverted for mill or other commercial uses. Therefore, we are able to apply section 651(1)(E) to Madison's dam on the present record.

Section 651 exempts from property taxation certain public property, including

[t]he pipes, fixtures, hydrants, conduits, gatehouses, pumping stations, reservoirs *and dams, used only for reservoir purposes*, of public municipal corporations engaged in supplying water, power or light, if located outside of the limits of such public municipal corporation.

36 M.R.S.A. § 651(1)(E) (emphasis added).

The question presented by this case is whether the legislature, by including the proviso that exempt dams must be used "only for reservoir purposes," intended for the exemption to apply only to those dams creating reservoirs for use in water supply

---

**1.** Some exhibits were introduced at the Superior Court hearing by the Town of Madison, but no motion for a trial of the facts was made under

Rule 80B(d) and the Superior Court, in its decision, limited its consideration to briefs and oral argument.

or also to extend to dams creating reservoirs used in generating electricity. Norridgewock, in seeking to impose the tax, urges that "reservoir purposes" should be limited to the provision of water for drinking, bathing and fire fighting only, while Madison contends that the purpose of the dam reservoir can be storing water for generating electricity.

Section 651 does not provide a definition of "reservoir." We note at the outset that, according to general usage, the term "reservoir" easily bears the broader definition that Madison ascribes to it. The dictionary defines "reservoir" as

> 1: a place where something is kept in store: as a: a place where water is collected and kept in quantity for use when wanted; esp: an artificial lake in which water is impounded for domestic and industrial use, irrigation, hydroelectric power, flood control, or other purposes...

Webster's Third New International Dictionary, at 1931 (1981).

 In the absence of a legislative definition, the term must be given a meaning consistent with the overall statutory context and must be construed in the light of the subject matter, the purpose of the statute and the consequences of a particular interpretation. *Town of Arundel v. Swain*, 374 A.2d 317, 320–21 (Me.1977). In this case we are persuaded by the language and syntax of the provision as a whole that the legislature, although consciously limiting the property tax exemption to dams that create reservoirs, intended to grant the exemption to all such dams "engaged in supplying water, power or light...." Reservoir dams, like "pipes," "fixtures" and "conduits," may serve either a waterworks or a hydroelectric facility. We read the statute plainly to provide that all of the property enumerated is tax exempt, regardless of whether it serves a waterworks or a hydroelectric facility. Had the legislature intended for the reservoir dam exemption to apply only in the waterworks context, it could easily have expressed that additional limitation in the statute. *See Woodcock v. Atlass*, 393 A.2d 167, 171 (Me. 1978).

We find nothing in *Inhabitants of Whiting v. Inhabitants of Lubec*, 121 Me. 121, 115 A. 896 (1922) and *City of Bangor v. City of Brewer*, 142 Me. 6, 45 A.2d 434 (1946), cases relied upon by both parties, inconsistent with our reading of section 651(1)(E). In this case the property assessed by Norridgewock is a hydroelectric facility consisting of land, a dam creating a reservoir for purposes of generating electricity, a powerhouse, an electrical generator and related equipment. Section 651(1)(E) provides a tax exemption for the dam, which creates a reservoir for the purpose of "supplying ... power or light." The Superior Court correctly determined it to be nontaxable.

The entry is:

Judgment affirmed.

All concurring.